# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| ELSIEN LORENZO, individually and on behalf of all others similarly situated, | **Case No. 4:24-cv-03881**<br>FLSA Collective Action |
| v. | Judge Sim Lake |
| ZF COLLECTIVE LLC | Magistrate Judge Dena Hanovice Palermo |

## LORENZO'S MOTION FOR COLLECTIVE CERTIFICATION

Respectfully submitted,

**PARMET LAW PC**

**Matthew S. Parmet**
TX Bar # 24069719
**Justin Vineyard**
TX Bar #24130854
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law
justin@parmet.law

**Attorneys for Plaintiffs**

TABLE OF CONTENTS

A.   SUMMARY ................................................................................. 1

B.   FACTUAL BACKGROUND ............................................................ 1

  1.   Zona Facta's independent contractor security guards had similar duties and pay, and they share a common employment experience. ............................................ 1

  2.   Zona Facta directed, controlled, and supervised the independent contractor security guards. ................................................................................. 2

  3.   Zona Facta's security guards' jobs did not require specialized training or unique skill. ........................................................................................ 3

  4.   Zona Facta's security guards did not risk their own investments or have any opportunity for profit or loss from Zona Facta's operations. ............................... 3

C.   ARGUMENT & AUTHORITIES ...................................................... 4

  1.   Collective certification is warranted. ................................................... 6

  2.   The *Lusardi* factors support certification of a collective action. ......................... 7

    2.1.   The factual and employment settings of the Plaintiff and proposed collective members are the same. .............................................................. 8

    2.2.   There are no individualized defenses. ................................................. 8

    2.3.   The fairness and procedural considerations support certification of a collective action. ..................................................................................... 9

  3.   Liability is not resolved at the notice stage. The relevant issue is whether merits questions can be answered collectively. ................................................. 10

  4.   Employment status is a merits-based analysis and is premature at this stage. ...... 11

  5.   Independent contractor misclassification cases are well-suited for certification. 13

  6.   Certification furthers the *Hoffman La-Roche* goal of judicial economy. ............... 15

D.   NOTICE & CONSENT PROCEDURE .............................................. 16

  1.   The production of contact information is routine in FLSA collective actions. .... 16

  2.   Putative Collective Members should receive notice electronically. .................... 17

    2.1.   Email notice should be provided to putative collective members. ................ 18

    2.2.   Text notice should be provided to putative collective members. ................... 18

E.   CONCLUSION ........................................................................... 19

TABLE OF EXHIBITS

| Ex. | Document |
|-----|----------|
| A | Declaration of Elsien Lorenzo |
| B | Employee/Contractor Handbook |
| C | Job Description |
| D | Non-Disclosure Agreement |

TABLE OF AUTHORITIES

## Cases

*Abercrombie v. Ridge*, C.A. 2:09-cv-00468, 2009 WL 3668112 (W.D. Pa. Nov. 4, 2009) ........ 11

*Allen v. McWane, Inc.*, C.A. 2:06-cv-158, 2006 WL 3246531 (E.D. Tex. Nov. 7, 2006) ........... 4

*Beall v. Tyler Techs., Inc.*, No. Civ. A. 2-08-CV-422, 2009 WL 3064689 (E.D. Tex. Sept. 23, 2009) ...................................................................................................................... 16

*Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026 (E.D. Pa. Jul. 8, 2020) ...................................................................................................................... 16

*Betancourt v. Maxim Healthcare Svcs., Inc.*, C.A. 1:10-cv-04763, 2011 WL 1548964 (N.D. Ill. Apr. 21, 2011) ............................................................................................................ 4

*Black v. Settlepou, P.C.*, No. 3:10-cv-1418-K, 2011 WL 609884 (N.D. Tex. Feb. 14, 2011) .... 16

*Botello v. COI Telecom, L.L.C.*, No. SA-10-CV-305-XR, 2010 WL 5464824 (W.D. Tex. Dec. 30, 2010) ...................................................................................................................... 14

*Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870 (N.D. Iowa 2008) ................................. 4

*Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663 (D. Colo. June 25, 2015) ........................................................................................... 12

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239 (3d Cir. 2013) ........................................ 4

*Camp v. The Progressive Corp.*, 8 Wage & Hour Cas.2d 477, 2002 WL 31496661 (E.D. La. 2002) ...................................................................................................................... 4

*Carter v. XPO Last Mile, Inc.*, No. 16-cv-01231-WHO, 2016 WL 5680464 (N.D. Cal. Oct. 3, 2016) ...................................................................................................................... 11

*Case v. Danos and Curole Marine Contrs., L.L.C.*, Nos. 14-2775, 14-2976, 2015 WL 1978653 (E.D. La. May 4, 2015) ............................................................................................. 18

*Collazo v. Forefront Educ., Inc.*, C.A. 1:08-cv-05987, 2010 WL 335327 (N.D. Ill. Jan. 28, 2010) ...................................................................................................................... 9

*Craig v. Rite Aid Corp.*, C.A. 4:08-cv-002317, 2009 WL 4723286 (M.D. Pa. Dec. 9, 2009) ..... 4

*Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. Civ. A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009) ................................................................. 16

*De Asensio v. Tyson Foods, Inc.*, 130 F.Supp.2d 660 (E.D. Pa. 2001) ...................................... 7

*Dearmond v. Alliance Energy Servs., L.L.C.*, No. 17-2222, 2017 WL 3173553 (E.D. La. Jul. 25, 2017) ...................................................................................................................... 18

*Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W..D. Tex. 2015) ....................... 15, 18

*Edwards v. Multiband Corp.*, Civ. No. 10-2826 (MJD/JJK), 2011 WL 117232 (D. Minn. Jan. 13, 2011) ................................................................................................................ 14

*Escobar v. Rameilli Gp., L.L.C.*, No. 16-15848, 2017 WL 3024741 (E.D. La. Jul. 7, 2017) .... 18

*Evans v. Lowe's Home Centers, Inc.*, C.A. 3:03-cv-00438-ARC, 2006 WL 1371073 (M.D. Pa. May 18, 2006) ................................................................................................................. 6

*Fontenot v. McNeil Industrial, Inc.*, No. 4:17-cv-3113, 2018 WL 5724863 (D. Neb. Sept. 19, 2018) ................................................................................................................. 13

*Fortuna v. QC Holdings, Inc.*, No. 06-CV-0016-CVE-PJC, 2006 WL 2385303 (N.D. Okla. Aug. 17, 2006) ................................................................................................................. 5

*Gallagher v. Lackawanna Cty.*, No. 3:07-cv-0912, 2008 WL 9375549 (M.D. Pa. May 30, 2008) ................................................................................................................. 6

*Garcia v. Tyson Foods, Inc.*, 890 F.Supp.2d 1273 (D. Kan. 2012) ................................. 5

*Gayle v. Harry's Nurses Registry, Inc.*, No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790 (E.D.N.Y. Mar. 9, 2009) ........................................................................................... 14

*Gee v. Suntrust Mortgage, Inc.*, No. C-10-1509-RS, 2011 WL 722111 (N.D. Cal. Feb. 18, 2011) ................................................................................................................. 11

*Geiger v. Z-Ultimate Self Defense Studios LLC*, C.A. No. 14-cv-00240-REB-NW, 2015 WL 1090181 (D. Colo. Mar. 10, 2015) ............................................................................ 14

*Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523 (2013) ................................... 6

*Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320 (N.D. Cal. Feb. 18, 2009) ........ 12

*Grayson v. K-Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996) ..4, 5

*H&R Block, LTD. v. Housden & Beard,* 186 F.R.D. 399 (E.D. Tex. 1999)................................. 9

*Hamilton v. Capex Oilfield Svcs., Inc.*, No. 1:16-cv-063, 2016 WL 9506025 (D.N.D. Oct. 24, 2016) ................................................................................................................. 5

*Hanks v. Big Lots Stores, Inc.,* C.A. 5:04-cv-00238-DF (E.D. Tex. Aug. 8, 2005) ..................... 4

*Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242, Doc. 96 (S.D. Tex. May 27, 2014)........ 14

*Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999) ................................. 13

*Harris v. Express Courier Int'l, Inc.*, No. 5:16-cv-05033, 2016 WL 5030371 (W.D. Ark. Sept. 19, 2016) ................................................................................................................. 14

*Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85 (E.D. Pa. 2015) ................. 13

*Heeg v. Adams Harris, Inc.*, 907 F.Supp.2d 856 (S.D. Tex. 2012) ................................. 10

*Hernandez v. Apache Corp.*, No. 4:16-cv-03454, Min. Entry granting Motion to Certify Class (S.D. Tex. Sept. 8, 2017) ........................................................................................... 14

*Hively v. Allis-Chalmers Energy, Inc.*, No. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013) 8, 9

*Hodzic v. Fedex Package Sys., Inc.*, No. 15-956, 2016 WL 6248078 (W.D. Pa. Oct. 26, 2016) . 13

*Houston v. U.R.S. Corp.*, 591 F.Supp.2d 827 (E.D. Va. 2008) ................................. 14

*In re Enterprise Rent-A-Car Employment Pracs. Litig.*, MDL No. 2056, 2010 WL 3447783 (W.D. Pa. Aug. 13, 2010) ........................................................................................... 9

*In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145(NRB), 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ........................................................................................................................... 14

*Jackson v. New York Tel. Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995) ............................................... 5

*Jackson v. Synergies3 Tec Svcs., LLC*, No. 4:19-cv-00178-SRC, 2019 WL 5579514 (E.D. Mo. Oct. 29, 2019) ......................................................................................................................... 13

*Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, Memo & Order on Pls' Mtn. for Cond. Cert. [ECF No. 17] (S.D. Tex. Oct. 15, 2015) ....................................................................... 17, 18

*Jones v. JGC Dallas LLC*, No. 3:11-cv-2743-O, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012), *adopted*, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) ........................................................... 10, 17

*Jones v. Yale Enf't Servs., Inc.*, No. 14-2831, 2015 WL 3936135 (E.D. La. Jun. 26, 2015) ..... 18

*Kaiser v. At The Beach, Inc.*, No. 08-CV-586-TCK-FHM, 2010 WL 5114729 (N.D. Okla. Dec. 9, 2010) ........................................................................................................................................ 6

*Kibodeaux v. Wood Group Prod. and Consulting Servs., Inc.*, Civ. A. No. 4:16-CV-3277, 2017 WL 1956738 (S.D. Tex. May 11, 2017) ................................................................................... 13

*Knox v. Jones Gp.*, 208 F.Supp.3d 954 (S.D. Ind. 2016) ....................................................... 16

*Krueger v. New York Tel. Co.*, No. Civ. A. 93 CIV. 0178, 1993 WL 276058 (S.D.N.Y. Jul. 21, 1993) .......................................................................................................................................... 13

*Labrie v. UPS Supply Chain Sols., Inc.*, No. C08-3182 PJH, 2009 WL 723599 (N.D. Cal. Mar. 18, 2009) ................................................................................................................................... 14

*Lee v. ABC Carpet & Home,* 236 F.R.D. 193 (S.D.N.Y. 2006) .............................................. 14

*Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06-cv-01158, 2007 WL 1875539 (D. Nev. Jun. 25, 2007) ............................................................................................................................ 14

*Lemus v. Burnham Painting and Drywall Corp.*, No. 2:06-cv-01158-RCJ-PAL, 2007 WL 1875539 (D. Nev. Jun. 25, 2007) ................................................................................................ 12

*Lewis v. ASAP Land Exp., Inc.*, C.A. No. 07-2226-KHV, 2008 WL 2152049 (D. Kan. May 21, 2008) .......................................................................................................................................... 14

*Lima v. Int'l Catastrophe Sols., Inc.*, 493 F.Supp.2d 793 (E.D. La. 2007) ............................... 14

*Lowe's Home Centers, Inc.*, 2004 WL 6039927 (M.D. Pa. Jun. 17, 2004) ................................. 7

*Mahrous v. LKM Enterps., LLC*, C.A. No. 16-10141, 2017 WL 2730886 (E.D. La. Jun. 26, 2017) ........................................................................................................................................... 18

*May v. E & J Well Svc., Inc.* C.A. No. 14-cv-00121-RBJ, 2014 WL 2922655 (D. Colo. Jun. 27, 2014) .......................................................................................................................................... 14

*McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009 WL 2778085 (D. Kan. Aug. 27, 2009) .......................................................................................................................................... 14

*McConnell v. EN Eng'g, LLC*, No. 2:20-CV-00153-MJH, 2020 WL 6747991 (W.D. Pa. Oct. 8, 2020) .......................................................................................................................................... 10

*McDonald v. Encompass Svcs., LLC.*, C.A. 2:16-cv-01203-LPL, ECF No. 29 (W.D. Pa. Dec. 20, 2016) ................................................................................................................ 18

*McGhee v. TOMS King, LLC*, 2:19-cv-01470-RJC, 2021 WL 1176097 (W.D. Pa. Mar. 29, 2021) ................................................................................................................ 16

*McLaurin v. Big Roy Trucking Inc.*, No. 4:15-cv-054, 2016 WL 11494737 (D.N.D. Apr. 1, 2016) ................................................................................................................ 5

*Meseck v. TAK Comms., Inc.*, No. 10-965, 2011 WL 1190579 (D. Minn. Mar. 28, 2011) ....... 12

*Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ. No. CCB-07-455, 2008 WL 554114 (D. Md. Feb. 26, 2008) ................................................................................................................ 14

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995) .................................................... 4

*Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000) ...................................................... 6

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ............................................................. 7, 8

*Ornelas v. Hooper Homes, Inc.*, No. 12-cv-3106 (JAP), 2014 WL 7051868 (D.N.J. Dec. 12, 2014) ................................................................................................................ 13

*Outlaw v. Secure Health, L.P.*, C.A. 3:11-cv-602, 2012 WL 3150582 (M.D. Pa. Aug. 2, 2012). 7

*Parrish v. Premier Directional Drilling, L.P.*, No. 5:16-cv-00417-DAE, ECF No. 28 (W.D. Tex. Oct. 14, 2016) ................................................................................................................ 14

*Parrish v. Premier Directional Drilling, L.P.*, No. 5:16-cv-00417-DAE, ECF No. 30 (W.D. Tex. Nov. 7, 2016) ................................................................................................................ 14

*Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) ................................................................................................................ 14

*Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264 (S.D. Iowa 2011) ........................................ 14

*Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264 (S.D. Iowa 2011) ........................................ 12

*Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762 (D. Md. 2008) .................................. 14

*Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822 (E.D. Pa. Oct. 7, 2016).............. 13

*Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, ECF No. 57 (W.D. Tex. Mar. 16, 2015) ................................................................................................................ 17

*Scott v. Bimbo Bakeries, USA, Inc.* No. 10-3154, 2012 WL 645905 (W.D. Pa. Feb. 29, 2012) . 13

*Scovil v. FedEx Ground Package Sys., Inc.*, 811 F.Supp.2d 516 (D. Me. 2011) ........................ 12

*Sealey v. EmCare, Inc.*, No. 2:11-cv-00120 (S.D. Tex. Mar. 28, 2012).................................... 14

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189 (3d Cir. 2011) ................................. 6, 7, 8

*Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-330-RP, 2015 WL 7075971 (W.D. Tex. Oct. 5, 2015) ................................................................................................................ 14

*Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012 (S.D. Iowa 2016) ...................................... 14

*Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002) ..................................................................................................................4, 5

*Thompson v. Peak Energy Svcs. USA, Inc.*, No. 13-0266, 2013 WL 5511319 (W.D. Pa. Oct. 4, 2013) ........................................................................................................................... 17

*Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941 (M.D. Fla. 1994).............................................. 4

*Vargas v. Gen. Nutrition Ctr., Inc.*, No. 2:10-cv-867, 2012 WL 3544733 (W.D. Pa. Aug. 16, 2012) .................................................................................................................................. 9

*Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672 (D. Colo. 1997) .......................................... 5

*Vega v. Point Security, LLC*, No. A-17-CV-049-LY, 2017 WL 4023289 (W.D. Tex. Sept. 13, 2017) ................................................................................................................................. 17

*Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522 (E.D. Pa. Nov. 29, 2016).... 13

*Walker v. Honghua Am., LLC*, 870 F.Supp.2d 462 (S.D. Tex. 2012)...................................... 10

*Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131, Doc. 22 (S.D. Tex. Jan. 5, 2015)14

*Westfall v. Kendle Intern., CPU, LLC*, No. 1:05-cv-00118, 2007 WL 486606 (N.D. W.Va. Feb. 15, 2007) .............................................................................................................................. 14

*White v. Integ. Elec. Techs., Inc.*, CA Nos. 11–2186, 12–359, 2013 WL 2903070 (W.D. La. Jun. 13, 2013)........................................................................................................................... 17

*White v. Integ. Elec. Techs., Inc.*, No. 11-2186, 12-359, 2013 WL 2930370 (E.D. La. Jun. 13, 2013) ................................................................................................................................. 18

*Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417 (W.D. Okla. 2017) ........................ 11, 14

*Wood v. Sundance Prof. Svcs., LLC*, No. 08-2391-JAR, 2009 WL 484446 (D. Kan. Feb. 26, 2009) ................................................................................................................................. 14

*Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) ...............................................6, 7

**Statutes**

29 U.S.C. § 216 ....................................................................................................................4, 6

A.    SUMMARY

Defendant ZF Collective LLC ("Zona Faca") knows it has to pay overtime to its security guards. To try to get around paying overtime wages as required under federal law, Zona Facta misclassified a group of its security guards as independent contractors. While it paid overtime to its employee security guards, it instead maintained a uniform practice of paying its independent contractor guards "straight time for overtime." This practice violates the Fair Labor Standards Act (FLSA).

Elsien Lorenzo seeks to allow similarly situated coworkers—other Zona Facta security guards who were treated as independent contractors and paid straight time for overtime—to receive notice of this collective action and stop the statute of limitations from running on their valuable back wage claims. Lorenzo's evidence meets and surpasses the standard for collective certification, and the Court should certify this collective action and order notice to be sent to putative collective members.

B.    FACTUAL BACKGROUND

1.    **Zona Facta's independent contractor security guards had similar duties and pay, and they share a common employment experience.**

Zona Facta's independent contractor security guards all share a common employment experience. Zona Facta's independent contractor security guards aren't just similar to one another. In fact—other than their benefits and pay—their job duties and work experience is virtually, if not completely, identical to other Zona Facta security guards who are classified as employees. The sole difference between these two groups is that the employees are provided with benefits and paid overtime. *See* Ex. B, Emp. Handbook, at ZF000048. This fact alone establishes that the proposed collective is similarly situated.

Zona Facta required all independent contractor (and employee) security guards to

follow the same policies and procedures and scheduled them the same hours, typically in excess of 40 hours each week. *See* Ex. B, Emp. Handbook, at ZF000048; Ex. A, Lorenzo decl., at ¶¶ 60-61. Nevertheless, Zona Facta paid each of its independent contractor security guards that same hourly rate for every hour worked, with no overtime pay for hours worked in excess of 40 each week. Ex. B, Emp. Handbook, at ZF000048.

In all, the members of the proposed collective shared a common employment experience.

### 2. Zona Facta directed, controlled, and supervised the independent contractor security guards.

Zona Facta maintains similar control over all aspects of these security guards' work. When first hired, Zona Facta required these workers sign an "Employee/Contractor Handbook," which detailed the policies and procedures it required the security guards to follow. Ex. B, Emp. Handbook, at ZF000043-44; Ex. A, Lorenzo decl., at ¶ 32. During their work, they were required to follow these and other policies and procedures imposed by Zona Facta. *See* Ex. B, Emp. Handbook, at ZF000044. The Handbook was signed by Employees and Contractors alike. *See id.* Zona Facta similarly required its independent contractor security guards to sign a non-disclosure agreement (NDA) with additional obligations. Ex. D, NDA. They were required to submit to random drug testing. Ex. B, Emp. Handbook, at ZF000049. They had no input into the creation or modification of Zona Facta's policies and procedures, and were not empowered with any independent judgment or discretion to deviate from what Zona Facta directed. Ex. A, Lorenzo decl., at ¶¶ 53-55.

Zona Facta assigned its security guards to specific locations and set the hours that they would work. Ex. C, Job Description, at *1-2; Ex. B, Emp. Handbook, at ZF000053. Zona Facta's security guards regularly report to Zona Facta throughout their shift, immediately

notify Zona Facta of any irregularities, and follow the instructions of Zona Facta. Ex. C, Job Description, at ZF000094-98; Ex. A, Lorenzo decl., at ¶¶ 29-30. In all, just like its employee security guards, Zona Facta uniformly controlled each of its independent contractor security guards, most readily through its Employee/Contractor Handbook and NDA.

**3. Zona Facta's security guards' jobs did not require specialized training or unique skill.**

Zona Facta's security guards did not require unique skill, a degree, or experience to perform their job duties. Ex. A, Lorenzo decl., at ¶ 50. Its security guards performed job functions that were not unique or specialized, but were mainly manual in nature. *Id.* at ¶ 56; *see* Ex. C, Job Description, at ZF000094-98. The security guards' jobs required protecting the ATM technician until the work on the ATM was completed. Ex. A, Lorenzo decl., at ¶ 52. The security guards were not empowered with any independent judgment or discretion to deviate from what Zona Facta directed. *Id.* at ¶ 54.

**4. Zona Facta's security guards did not risk their own investments or have any opportunity for profit or loss from Zona Facta's operations.**

Zona Facta's security guards were unable to contract directly with Zona Facta's clients and were not held financially responsible for any losses. Ex. D, NDA, at ZF000079-80; Ex. A, Lorenzo decl., at ¶ 46. Zona Facta provided them with uniforms and patches to wear while working. Ex. A, Lorenzo decl., at ¶ 15. Although the independent contractor security guards provided their own guns and armor, this was a relatively small expenditure, and—more importantly—the same "investment" was required of Zona Facta's employee security guards. The security guards relied on on Zona Facta to provide them work, and the amount they made was dependent solely on the number of days they worked. Ex. A, Lorenzo decl., at ¶¶ 12, 42.

C.    **ARGUMENT & AUTHORITIES**

Under the FLSA, an employee may bring an action against an employer "[on] behalf of himself ... and other employees similarly situated." 29 U.S.C. § 216. ). "Section 216(b) collective actions are intended 'to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer.'" *Roussell v. Brinker Intern., Inc.*, 441 Fed. Appx. 222, 227 (5th Cir. 2011) (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008)). Unlike a Rule 23 class action, in which plaintiffs "opt out" of the class, an FLSA plaintiff must "opt in" to become part of the collective. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Prior to the Fifth Circuit's decision in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), the method used by the majority of district courts in the Fifth Circuit for determining whether to certify an FLSA collective action was the two-tiered approach expressed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Mooney*, 54 F.3d at 1213-14. The two steps of the *Lusardi* approach are the "notice stage" and the "decertification stage." *Id.* at 1216. *Lusardi*'s first step, or "conditional certification," "involves 'an initial "notice stage" determination' that proposed members of a collective action are similar enough to receive notice of the pending action." *Swales*, 985 F.3d at 436 (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). This initial determination was often based on minimal evidence, such as "the pleadings and any affidavits" and "typically results in 'conditional certification' of a representative class." *Mooney*, 54 F.3d at 1214. *Lusardi* step two occurred "[a]t the conclusion of discovery (often prompted by a motion to decertify)." *Swales*, 985 F.3d at 437 (internal quotation omitted). At decertification, the operative inquiry is

"whether the named plaintiffs and opt-ins are 'similarly situated' and may therefore proceed to trial as a collective. If the court finds that the opt-ins are not sufficiently similar to the named plaintiffs, it must dismiss the opt-in employees, leaving only the named plaintiff 's original claims." *Id.* (internal quotations omitted).

In *Swales*, the Fifth Circuit found *Lusardi*'s approach should not be automatically applied. 985 F.3d at 440. "Instead of adherence to *Lusardi*, or any test for 'conditional certification,' a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Id.* at 441. The purpose of this analysis is to determine "early in the case, whether merits questions can be answered collectively." *Id.* at 442. In other words, the Fifth Circuit explained that when the facts and legal arguments relevant to proving the Plaintiff's claims are the same facts and legal arguments relevant to proving the proposed collective members' claims, certification should be granted. *Id.*

While *Swales* eliminates mandatory adherence to the two-step process under *Lusardi*, it nevertheless maintains the same "similarly situated" standard. *See Segovia v. Fuelco Energy LLC*, No. SA- 17-CV-1246-JK, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021) ("Although *Swales* brings step-two of *Lusardi* to the forefront of FLSA collective actions, it does not alter the meaning of 'similarly situated' as honed and considered through judicial decision since the phrase first appeared undefined in the statute.").

Discovery has shown that the proposed collective is similarly situated. Plaintiff's motion for collective certification is therefore due to be granted.

1.    **Collective certification is warranted.**

Certification is "justified when the pleadings and … preliminary discovery show sufficient similarity between the plaintiffs' [and the putative collective's] employment situations." *Swales*, 985 F.3d at 441-42. And, in those cases where "the plaintiffs all have the same job description and the allegations revolve around the same aspect of that job," certification should be granted. *See id.* at 441-42 (rejecting the idea that "a district court will … need mountains of discovery to decide whether notice is appropriate" in such a case).

As *Swales* indicates, this case is ideal for certification. The proposed collective members performed the same job duties, had a similar employment experience, and allege wages owed from a similar pay practice for the work they performed for Zona Facta. Lorenzo and the proposed collective members:

- Performed similar work as security guards;

- Were classified as independent contractors;

- Were subject to the same work policies;

- Were subject to the same level of control and supervision;

- Were subject to the same skill and educational requirments;

- Had the same opportunity for provit or loss relative to Zona Facta;

- Invested (or did not invest) similar economic resources as compared to Zona Facta; and

- Were paid an hourly rate without overtime compensation for hours worked over 40 in a week.

Evidence thus shows that Lorenzen "is similarly situated to other employees who were subjected to the same pay practice." *Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 725 (S.D. Tex. 2021) (Lake, J.). The material facts with respect to proving Lorenzo's claims are the same material facts relevant to proving the proposed collective members' claim. Thus, "merits

questions can be answered collectively," and certification should be granted. *Swales*, 985 F.3d at 442.

Similarly, the legal issues relevant to Lorenzo's claim are the same legal issues relevant to the claims of the potential collective members. For instance, some of the legal issues relevant to the Lorenzo's and potential collective members' claims are: (1) whether Lorenzo and the potential collective members were misclassified as independent contractors and (2) whether they are exempt from overtime compensation under the FLSA. These common questions can be resolved on a collective basis because the facts and evidence are the same for the Lorenzo and the potential collective members. Thus, the liability question as to whether Zona Facta's policy of classifying security guards as independent contractors and paying them straight-time for all hours worked violates the FLSA can be resolved on a collective basis.

In light of the similarities between Lorenzo and the potential collective members, collective certification should be granted.

**2.    The *Lusardi* factors support certification of a collective action.**

Because *Swales* did not alter the question of when a putative collective is "similarly situated," courts have continued to use factors from *Lusardi* to determine whether employees are "similarly situated" with respect to the alleged violations. *See Segovia,* 2021 WL 2187956, at *7; *see also*, *e.g.*, *Torres v. Chambers Protective Services, Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *3 n.3 (N.D. Tex. Aug. 5, 2021) (citing post-*Swales* cases that still use the *Lusardi* factors); *Segovia v. Fuelco Energy LLC*, No. 17-cv-1246, 2021 WL 2187956, at *10 (W.D. Tex. May 28, 2021) (applying the *Lusardi* factors post-*Swales*). Those factors are: "(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and

procedural considerations." *Lusardi*, 118 F.R.D. at 359. Each of these factors will be addressed in turn.

### 2.1. The factual and employment settings of the Plaintiff and proposed collective members are the same.

The first factor "assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the potential opt-ins are similarly situated." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018). Collective members do not have to hold identical employment to be similarly situated. Rather, plaintiffs "must show a 'demonstrated similarity' among the purported [collective] members, as well as a 'factual nexus' that binds the [collective] members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unimaginable trial of individualized inquiries." *Cotton-Thomas v. Volvo Grp. N. Am., LLC*, No. 3:20-CV-113, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021).

Here, Lorenzo and the proposed collective members are all security guards. Moreover, Lorenzo and the proposed collective members were paid an hourly wage. Further, Lorenzo and the proposed collective members were uniformly denied overtime compensation due to Zona Facta's policy of classifying security guards as independent contractors. Therefore, Lorenzo and the proposed collective members had the same job position, performed the same duties and responsibilities, and were subject to the same independent contractor classification policy.

The facts and employment conditions for Lorenzo and the proposed collective members are identical. Accordingly, this factor supports granting Lorenzo's motion.

### 2.2. There are no individualized defenses.

Second, courts look to whether the defendant's defenses are so individualized that it is

inefficient or unmanageable to proceed with a representative collective. *Trottier v. FieldCore Servs. Solutions, LLC*, No. 2:20-CV-186, 2022 WL 658765, at *8 (N.D. Tex. March 4, 2022). Even though a "defense may require specific factual inquiries about each Plaintiff," when the defendant asserts the defense against each plaintiff, "collective treatment is less problematic." *Segovia*, 2021 WL 2187956, at *10. Further, "to the extent there are individual defenses that apply to specific Plaintiffs or categories of Plaintiffs," the court may weigh whether "such defenses carry less weight than the global defenses and the similarities of the Plaintiffs .… Even if Defendant must pose an inquiry to each of the [individual] Plaintiffs, the Court may determine that doing so in a collective trial is no more difficult than in individual trials." *Segovia*, 2021 WL 2187956, at *11; *see also Torres*, 2021 WL 3419705, at *7 (finding the need to assess by sub-group does not "sufficiently individualize defenses to prevent efficient collective action"). Ultimately, "the district court has the discretion to determine whether the potential defenses would make the [collective] unmanageable." *Reyes v. Tex. EZPawn, L.P.*, No. CIV.A. V-03-128, 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007).

Here, there are no individualized defenses.  Like Lorenzo, all proposed collective members were classified as independent contractors and did not receive overtime compensation for hours worked over 40 in a week.  Further, Lorenzo and the proposed collective members performed the same job duties.  Thus, there are no unique defenses applicable to some proposed collective members but not applicable to others. This factor supports granting Lorenzo's Motion.

### 2.3.    The fairness and procedural considerations support certification of a collective action.

Finally, courts examine whether notice would facilitate the primary purposes of FLSA collective actions "(1) to lower costs to the plaintiffs through the pooling of resources, and (2)

to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Snively*, 314 F. Supp. 3d at 743.

Here, there are potentially hundreds of other security guards that were similarly denied overtime compensation for hours worked over 40 in a week. A collective action will promote the benefits of the FLSA by allowing all individuals with the same claim to pursue them in one proceeding. This factor supports granting Lorenzo's motion.

> **3.    Liability is not resolved at the notice stage. The relevant issue is whether merits questions can be answered collectively.**

Some employers attempt to defeat collective action certification by arguing the merits of the case rather than asserting that the claims of the plaintiff and proposed collective members are dissimilar. However, "the similarly situated determination is not 'an opportunity for the court to assess the merits of [any] claim by deciding factual disputes or making credibility determinations." *Segovia*, 2021 WL 2187956, at *7. Consideration of the merits "is inappropriate at the notice stage." *Cortez v. Casa do Brasil, LLC*, 646 F.Supp.3d 847, 856 (S.D. Tex. 2022).

Indeed, *Swales* made clear that the courts should not make a liability finding at the certification stage, stating that there should be "[n]o judicial thumbs (or anvils) on the scale" related to the merits of the case at the certification stage. 985 F.3d at 436. Instead, the issue for certification is simply "whether merits questions can be answered collectively" and this certification decision must be made "as early as possible." *Id.* at 441-442. "Though *Swales* directs district courts to consider the merits of an action at the outset, the focus of the inquiry is ... not whether a plaintiff 'will ultimately prevail in proving all the elements of the alleged FLSA violation[,]' but whether the merits of the proposed collective's case can be decided

collectively." *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *5 (E.D. Tex. June 13, 2022)).

In the present case, there abundant evidence that Lorenzo and the proposed collective members are similarly situated pursuant to the FLSA. As such, the Court should now grant Lorenzo's motion and authorize the notice to be sent to the the proposed collective members.

**4.    Employment status is a merits-based analysis and is premature at this stage.**

Likewise, Zona Facta may also argue that Lorenzo has not met the economic realities test to show security guards are misclassified as independent contractors. That argument goes to the merits of the case. Courts regularly recognize that there is an inadequate record at the certification stage to apply economic realities factors and these factors go to the ultimate issues, not whether notice should issue under the lenient similarly-situated analysis.[1] Here,

---

[1] *E.g.*, *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 421 (W.D. Okla. 2017) ("The undersigned agrees with those courts that have concluded the economic realities inquiry is appropriate at step two of the *ad hoc* approach, that is in addressing a motion for decertification."); *Carter v. XPO Last Mile, Inc.*, No. 16-cv-01231-WHO, 2016 WL 5680464, at *5 (N.D. Cal. Oct. 3, 2016) ("If that were the test, no independent contractor misclassification case could be certified under [the] FLSA.... Whether there are **materially** significant differences is best tested at the "second step" of the FLSA certification process." (emphasis in original)); *Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674, at *7-8 (E.D. La. Nov. 6, 2013) ("[S]uch an inquiry [under the economic realities test] is better addressed at the decertification stage after discovery has occurred[.]"); *Scovil v. FedEx Ground Package Sys., Inc.*, 811 F.Supp.2d 516, 519 (D. Me. 2011) ("I will have to deal with the economic realities factors conclusively when I determine ultimately whether the drivers are employees or independent contractors, but the question for me now is simpler: whether the drivers in the proposed class are similarly situated."); *Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 274 (S.D. Iowa 2011) ("Defendants also urge the Court to look to the 'economic realities' of the working relationship.... Making a determination, at this time, ... pursuant to the 'economic realities' test, would ... improperly delve into the merits of Plaintiffs' claim."); *Meseck v. TAK Comms., Inc.*, No. 10-965, 2011 WL 1190579, at *6 (D. Minn. Mar. 28, 2011) ("Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion."); *Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, at *4 (N.D. Cal. Feb. 18, 2009) ("Defendants' concern about individualized inquiries does not require the Court to deny

Lorenzo has shown, *inter alia*: (a) Zona Facta controlled putative collective members; (b) Zona Facta set the rates of pay; and (c) no unique skill was required. *See* Ex. A, Lorenzo decl., at ¶¶ 9, 39, 50.

*Swales* has not altered this analysis. Courts routinely find that the issue of whether a worker was improperly classified as an independent contractor goes to the merits of the case and is not at issue during the notice stage—where this case is now. *See, e.g., Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *3 (D. Colo. June 25, 2015). As one court stated in granting conditional certification over the employer's invitation to consider the economic realities test and purported individualized circumstances of the collective members:

> The Defendants appear to misconstrue the role of the Court at this juncture. As noted, the Court does not weigh evidence or resolve factual disputes at the first stage of certification. Nor does the Court apply the economic realities test to the individual circumstances of the Plaintiffs or potential opt-in plaintiffs. Instead, it simply considers whether sufficient allegations have been made, supported by affidavits or declarations, to show that there are individuals "similarly situated" to the named plaintiffs.

*Id.*; *see also Kibodeaux v. Wood Group Prod. and Consulting Servs., Inc.*, Civ. A. No. 4:16-CV-3277, 2017 WL 1956738, at *3 (S.D. Tex. May 11, 2017) (explaining the economic realities test argument is a merits-based argument, and courts are not to engage in merits-based analysis at the notice stage of a collective action).

---

conditional certification…. Under the two-stage certification procedure, Defendants can present this evidence and make these arguments as part of a motion to decertify the class once discovery is complete."); *Lemus v. Burnham Painting and Drywall Corp.*, No. 2:06-cv-01158-RCJ-PAL, 2007 WL 1875539, at *5 (D. Nev. Jun. 25, 2007) ("The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees … and … are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed.").

This is because "even if Plaintiffs' claims turn out to be meritless or, in fact all Plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case." *See Krueger v. New York Tel. Co.*, No. Civ. A. 93 CIV. 0178, 1993 WL 276058, at *2 (S.D.N.Y. Jul. 21, 1993); *see also Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999) ("[S]ubsequent discovery may reinforce or undermine th[e] finding [that the collective is similarly situated.]"). Any argument as to whether the security guards are employees versus independent contractors should thus be rejected because such arguments go to the merits of this case.

**5.    Independent contractor misclassification cases are well-suited for certification.**

Courts in this Circuit have routinely found allegations of misclassification as independent contractors to be a common policy or plan for purposes of conditional

certification.[2] Courts throughout the nation have reached the same conclusion.[3]

---

[2] *E.g.*, *Lagunas v. La Ranchera, Inc.*, No. CV H-22-17, 2023 WL 5511198, at *1 (S.D. Tex. Aug. 25, 2023) (delivery drivers); *Marissa Torres, v. Chambers Protective Services, Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *12 (N.D. Tex. Aug. 5, 2021) (gate guards/attendants); *Sterling v. Greater Houston Transportation Co.*, No. CV H-20-910, 2021 WL 2954663, at *1 (S.D. Tex. July 14, 2021); *Hernandez v. Apache Corp.*, No. 4:16-cv-03454, Min. Entry granting Motion to Certify Class (S.D. Tex. Sept. 8, 2017) (all day rate independent contractors, regardless of position); *Parrish v. Premier Directional Drilling, L.P.*, No. 5:16-cv-00417-DAE, ECF No. 28, at *15 (W.D. Tex. Oct. 14, 2016), *adopted by* ECF No. 30 (W.D. Tex. Nov. 7, 2016) (day rate independent contractor directional drillers); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-330-RP, 2015 WL 7075971, at *6 (W.D. Tex. Oct. 5, 2015) (day-rate independent contractors, regardless of job position); *Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131, Doc. 22 (S.D. Tex. Jan. 5, 2015) (centrifuge technicians); *Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242, Doc. 96 (S.D. Tex. May 27, 2014) (solids control technicians); *Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) (day-rate oil spill workers); *Sealey v. EmCare, Inc.*, No. 2:11-cv-00120 (S.D. Tex. Mar. 28, 2012) (certified registered nurse anesthetists); *Botello v. COI Telecom, L.L.C.*, No. SA-10-CV-305-XR, 2010 WL 5464824 (W.D. Tex. Dec. 30, 2010) (field service technicians);

[3] *E.g.*, *Jackson v. Synergies3 Tec Svcs., LLC*, No. 4:19-cv-00178-SRC, 2019 WL 5579514, at *7 (E.D. Mo. Oct. 29, 2019) (all satellite installation technicians); *Fontenot v. McNeil Industrial, Inc.*, No. 4:17-cv-3113, 2018 WL 5724863, at *4 (D. Neb. Sept. 19, 2018) (all welders), *rep. and rec. adopted by* 2018 WL 5724043 (D. Neb. Nov. 1, 2018); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 423 (W.D. Okla. 2017) (all drilling consultants nationwide); *LeBlanc v. Halliburton Co.*, No. CV 17-0718 KG-GJF, 2018 WL 3999567 (D.N.M. Aug. 21, 2018) (all independent contractor directional drillers nationwide); *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1025 (S.D. Iowa 2016) (all delivery drivers across several states); *Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522, at *6 (E.D. Pa. Nov. 29, 2016) (exotic dancers); *Hodzic v. Fedex Package Sys., Inc.*, No. 15-956, 2016 WL 6248078, at *9 (W.D. Pa. Oct. 26, 2016) (delivery drivers); *Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85, 91 (E.D. Pa. 2015) (all non-exempt independent contractors); *Harris v. Express Courier Int'l, Inc.*, No. 5:16-cv-05033, 2016 WL 5030371, at *4 (W.D. Ark. Sept. 19, 2016) (all delivery drivers "throughout the Southeast"); *Geiger v. Z-Ultimate Self Defense Studios LLC*, C.A. No. 14-cv-00240-REB-NW, 2015 WL 1090181, at *3 (D. Colo. Mar. 10, 2015) (self-defense class instructors); *Ornelas v. Hooper Homes, Inc.*, No. 12-cv-3106 (JAP), 2014 WL 7051868, at *5 (D.N.J. Dec. 12, 2014) (paramedical exam providers); *May v. E & J Well Svc., Inc.* C.A. No. 14-cv-00121-RBJ, 2014 WL 2922655, at *3 (D. Colo. Jun. 27, 2014) (flow testers); *Scott v. Bimbo Bakeries, USA, Inc.* No. 10-3154, 2012 WL 645905, at *7 (W.D. Pa. Feb. 29, 2012) (delivery drivers), *abrogation on diff. grounds rec'g'd by Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822, at *9 (E.D. Pa. Oct. 7, 2016); *Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 274 (S.D. Iowa 2011) (all satellite installation technicians); *Edwards v. Multiband Corp.*, Civ. No. 10-2826 (MJD/JJK), 2011 WL 117232, at *5 (D. Minn. Jan. 13, 2011) (all satellite technicians); *In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145(NRB), 2010 WL 4340255, at *3-4 (S.D.N.Y. Oct. 27, 2010) (exotic dancers); *McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009

**6.      Certification furthers the *Hoffman La-Roche* goal of judicial economy.**

In *Sperling v. Hoffman-La Roche*, 110 S. Ct. 482 (1989), the Supreme Court explained

that collective actions permit "plaintiffs the advantage of lower individual costs to vindicate

their rights by the pooling of resources.  The judicial system benefits by efficient resolution in

one proceeding of common issues of law and fact arising from the same alleged … activity."

*Id*. at 485.  A collective action is favored because it serves the legitimate goals of avoiding a

multiplicity of duplicative lawsuits and expediting disposition of the action. *Id*.

As is the case here, the judicial system clearly benefits by the efficient resolution, in

one proceeding, of common issues of law and fact arising from the same unlawful conduct.

Zona Facta's misclassification of security guards as independent contractors and denial of

overtime pay was uniform for all security guards at Zona Facta. It would burden the Court to

resolve numerous cases addressing the same claims with the same facts and evidence.

Moreover, the compensation paid to the potential collective members is also easily identified

---

WL 2778085, at *4-5 (D. Kan. Aug. 27, 2009) (loan officers); *Labrie v. UPS Supply Chain Sols., Inc.*, No. C08-3182 PJH, 2009 WL 723599, at *5 (N.D. Cal. Mar. 18, 2009) (delivery drivers); *Gayle v. Harry's Nurses Registry, Inc.*, No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790, at *9-10 (E.D.N.Y. Mar. 9, 2009) (nurses); *Wood v. Sundance Prof. Svcs., LLC*, No. 08-2391-JAR, 2009 WL 484446, at *2 (D. Kan. Feb. 26, 2009) (construction workers); *Houston v. U.R.S. Corp.*, 591 F.Supp.2d 827, 833-34 (E.D. Va. 2008) (housing inspectors); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 772 (D. Md. 2008) (janitorial workers); *Lewis v. ASAP Land Exp., Inc.*, C.A. No. 07-2226-KHV, 2008 WL 2152049, at *1 (D. Kan. May 21, 2008) (delivery drivers); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ. No. CCB-07-455, 2008 WL 554114 (D. Md. Feb. 26, 2008) (house painters); *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F.Supp.2d 793, 798-99 (E.D. La. 2007) (manual laborers); *Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06-cv-01158, 2007 WL 1875539, at *4-5 (D. Nev. Jun. 25, 2007) (house painters); *Westfall v. Kendle Intern., CPU, LLC*, No. 1:05-cv-00118, 2007 WL 486606, at *8-9 (N.D. W.Va. Feb. 15, 2007) (house painters); *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (carpet installation mechanics).

by the records. Thus, a collective action is the ideal means to resolve the claims of the potential collective members.

**D.    NOTICE & CONSENT PROCEDURE**

Lorenzo seeks to notify the following group of putative collective members:

**All persons currently and formerly employed by, or working on behalf of, ZF Collective LLC as security guards who were paid "straight time for overtime" at any point from October 10, 2021, to the present.**

To facilitate the Notice process and preserve the rights of those who have not yet opted-in, Lorenzo proposes the attached Notice and Consent Forms for approval by the Court. *See* Ex. 1. Variations of the proposed Notice and Consent Forms have been adopted by courts in this District and districts throughout the United States. The same is true of Lorenzo's proposed opt-in timeline. Their use is appropriate in this case.

**1.    The production of contact information is routine in FLSA collective actions.**

The Supreme Court acknowledged that, in order for employees to take advantage of the benefits of an FLSA collective action, they need to receive "accurate and timely notice" regarding the pending collective action. FLSA plaintiffs are "entitled to specific discovery to determine the names and addresses of the putative class members." *Hoffmann-LaRoche*, 493 U.S. 165, at 169.

Lorenzo thus requests the Court order that Zona Facta provides Collective Counsel with the names, last known home addresses, email addresses, and phone numbers for all the putative collective members Courts routinely require this information to facilitate the issuance of notice. *Fulton v. Bayou Well Svcs. LLC*, 208 F.Supp.3d 798, 803 (N.D. Tex. 2016); *see Hoffmann-LaRoche*, 493 U.S. 165, 170 ("The District Court was correct to permit discovery of the names and addresses …."); *see also, e.g., Dyson v. Stuart Petrol. Testers, Inc.*, 308 F.R.D. 510,

517 (W..D. Tex. 2015) (ordering production of names, addresses, email addresses, and phone numbers); *Beall v. Tyler Techs., Inc.*, No. Civ. A. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (granting collective notice via email and compelling the employer to produce all email addresses, both personal and work); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. Civ. A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735, at * 15 (D. Nev. Jan. 12, 2009) (granting circulation of notice via U.S. mail and email); *Ortiz v. Rain King, Inc.,* C.A. 4:02-cv-04012, 2003 WL 23741409, at *1 (S.D. Tex. Mar. 10, 2003) (ordering the defendant to produce the names, addresses, and phone numbers of collective in a readable computer format)*; Alba*, 2002 WL 32639827, at *1 (ordering the defendant to produce the full name, last known address, telephone numbers, dates and location of employment for prior three years). "[I]t is entirely appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change directions, they typically retain the same email addresses and phone numbers." *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026, at *9 (E.D. Pa. Jul. 8, 2020) (collecting cases); *see also McGhee v. TOMS KING, LLC*, 2:19-cv-01470-RJC, 2021 WL 1176097, at *9 (W.D. Pa. Mar. 29, 2021) ("With respect to Plaintiffs' request to distribute notice via mail, e-mail, and text message, the Court finds these facilitative measures to be appropriate under the circumstances of this case.").

### 2. Putative Collective Members should receive notice electronically.

Electronic notice should be issued to putative collective members with hyperlinks to a website dedicated to hosting the proposed Notice and Consent Form only. *Black v. Settlepou, P.C.*, No. 3:10-cv-1418-K, 2011 WL 609884, at *6 (N.D. Tex. Feb. 14, 2011) ("[Plaintiff]'s counsel is authorized to maintain an internet website for the purpose of informing similarly

situated persons of their right to opt into this litigation."). "Opening a public website improves access to consent forms," and "[a]s with email, communication through websites is common." *Knox v. Jones Gp.*, 208 F.Supp.3d 954, 964 (S.D. Ind. 2016). The Court should permit email and text notice, and for Plaintiff to host a website for the proposed Notice and Consent Form. *White v. Integ. Elec. Techs., Inc.*, CA Nos. 11–2186, 12–359, 2013 WL 2903070, at *8 (W.D. La. Jun. 13, 2013) (permitting electronic signatures on consent forms from a dedicated website).

### 2.1.    Email notice should be provided to putative collective members.

Email notice has become an embraced form of notice in FLSA collective actions. *See Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, ECF No. 57, at *2 (W.D. Tex. Mar. 16, 2015) (citing *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *5 n.9 (N.D. Tex. Nov. 29, 2012)); *Thompson v. Peak Energy Svcs. USA, Inc.*, No. 13-0266, 2013 WL 5511319, at *2 (W.D. Pa. Oct. 4, 2013)). One court explained, years ago, that electronic notice should be the rule in providing collective notice:

> [I]n 2015 it should rarely be entertaining arguments about the appropriateness of email notice. Email is not the wave of the future; email is the wave of the last decade and a half. **Many people use their email address as their primary point of contact, and in almost every situation, more opt-in plaintiffs will be on notice of a pending collective action if the potential class members are also notified via email**.

*Stage 3 Separation*, No. 5:14-cv-603-RP, ECF No. 57, at *2 (emphasis added). Other courts have reached the same conclusion: "notice by e-mail will **more likely** reach potential class members than regular mail sent to the home address ...." *Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, ECF No. 17, at *12 (S.D. Tex. Oct. 15, 2015) (emphasis added).

### 2.2.    Text notice should be provided to putative collective members.

"[I]n the world of 20[25], email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus [ ] using email and texts to

notify potential [collective] members is entirely appropriate." *Vega v. Point Security, LLC*, No. A-17-CV-049-LY, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017), *rpt. and rec. adopted* 2017 WL 8774233 (Oct. 12, 2017). For this reason, "Multiple courts … have ordered the production of telephone numbers in [FLSA] cases." *Mahrous v. LKM Enterps., LLC*, C.A. No. 16-10141, 2017 WL 2730886, at *4 (E.D. La. Jun. 26, 2017) (citing *Jones v. Yale Enf't Servs., Inc.*, No. 14-2831, 2015 WL 3936135, at *3 (E.D. La. Jun. 26, 2015)); *Case v. Danos and Curole Marine Contrs., L.L.C.*, Nos. 14-2775, 14-2976, 2015 WL 1978653, at *8 (E.D. La. May 4, 2015); *White v. Integ. Elec. Techs., Inc.*, No. 11-2186, 12-359, 2013 WL 2930370, at *11 (E.D. La. Jun. 13, 2013)); *Dearmond v. Alliance Energy Servs., L.L.C.*, No. 17-2222, 2017 WL 3173553, at *3 (E.D. La. Jul. 25, 2017); *see also Escobar v. Rameilli Gp., L.L.C.*, No. 16-15848, 2017 WL 3024741, at *3 (E.D. La. Jul. 7, 2017) ("Courts have approved of the use of text messages because it facilitates notice to class members who may have changed addresses before the opt-in period.").

## E.   CONCLUSION

Lorenzo has met his burden to show that a group of similarly situated Zona Facta security guards were misclassified as independent contractors and denied overtime pay for hours worked over 40 in a week. Lorenzo requests the Court grant this motion and approve the proposed Notice & Consent Form and opt-in procedures.

Respectfully submitted,

*/s/ Justin Vineyard*

By: _____

**Matthew S. Parmet**
TX Bar # 24069719
S.D. Tex. Bar # 1076547
**Justin Vineyard**
TX Bar # 24130854
S.D. Tex. Bar # 3899446
**PARMET LAW PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law
justin@parmet.law

**Attorneys for Plaintiff**

**CERTIFICATE OF CONFERENCE**

Prior to filing this motion, Plaintiff's consel conferred with Defendant's counsel regarding consent to conditional certification. However, agreement could not be reached as of the time of filing.

*/s/ Justin Vineyard*

_____

Justin Vineyard

- 20 -